UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

MICHAEL JAMES EVANS,

              Plaintiff,

     v.

DIRECTOR COLLETTE PETERS;
SUPERINTENDENT JOHN MYRICK; LT.
JAMES BURCHETT; LT. RICH YOUNG;
C.O. AARON GILROY; C.O. SYLVAN
DECORIA; CAPT. LARRY LYTLE;
CAPT. LAINE IVERSON; C.O. LENNY
COUNIHAN; CORP. VINCENT
BEERBOWER; C.O. ANTONIO
FERNANDEZ; C.O. DOUG ZOLLMAN;
C.O. MARK LATTIMER; and C.O. JASON
REYNOLDS,

              Defendants.

Case No. 2:16-cv-00928-MK

**OPINION AND
ORDER**

**KASUBHAI,** United States Magistrate Judge:

     In this § 1983 action, Plaintiff Michael James Evans ("Plaintiff") asserts five claims

against Defendants Collette Peters, John Myrick, James Burchett, Rich Young, Aaron Gilroy,

Sylvan Decoria, Larry Lytle, Laine Iverson, Lenny Counihan, Vince Beerbower, Antonio

Fernandez, Dough Zollman, Mark Lattimer, and Jason Reynolds (collectively, "Defendants"):

(1) a First Amendment retaliation claim against Defendants Myrick, Burchett, Young, Gilroy,

and Decoria; (2) a First Amendment retaliation claim against Defendants Myrick, Iverson, Lytle,

Fernandez, Lattimer, Beerbower, Reynolds, Zollman, and Counihan; (3) a Fourth Amendment

unlawful seizure claim against Defendants Myrick, Iverson, Lytle, Fernandez, Lattimer,

Beerbower, Reynolds, Zollman, and Counihan; (4) a Fourteenth Amendment claim for violation

of due process against Defendants Myrick, Burchett, Young, Gilroy, and Decoria; and (5) a

Fourteenth Amendment claim for violation of due process against Defendants Myrick, Iverson,

Lytle, Fernandez, Lattimer, Beerbower, Reynolds, Zollman, and Counihan. Pl.'s Fourth Am.

Compl. 5–9, ECF No. 125 ("FAC"). Plaintiff moves for summary judgment as to his First

Amendment and Fourteenth Amendment claims. Pl.'s Mot. Summ. J. 1–2, ECF No. 144 ("Pl.'s

Mot."). In addition, Defendants move for summary judgment as to all of Plaintiff's claims.

Defs.' Mot. Summ. J. 9–29, ECF No. 194 ("Def.'s Mot."). For the reasons that follow, Plaintiff's

motion is DENIED and Defendants' motion is GRANTED in part and DENIED in part.

FACTS

Plaintiff is an adult in custody ("AIC") of the Oregon Department of Corrections

("ODOC") at Two Rivers Correctional Institution ("TRCI"). FAC 2, ECF No. 125. In 2015 and

in 2016, Defendants issued two Misconduct Reports to Plaintiff. Defs.' Mot. 3, ECF No. 194.

## I.    2015 Incident

On October 31, 2015, Plaintiff used the TRCI law library to draft and file a motion for his

pending case in the District of Oregon. *See* Pl.'s Resp. 2, ECF No. 205; *see also* Pl.'s Mot., Ex. 5

at 1, ECF No. 144-2. At all relevant times, Plaintiff was an AIC in the TRCI's administrative

housing unit ("AHU") and Defendant Gilroy was in the control point that day. Pl.'s Resp. 3, ECF

No. 205. When Plaintiff requested eight pages of typing paper, Defendant Gilroy told Plaintiff

that he could receive only five pages per day. *Id.* Plaintiff then explained to Defendant Gilroy

that the five-page limit only applied to AICs in the TRCI disciplinary segregation unit ("DSU"),

not AICs in the AHU such as Plaintiff. *Id.* Defendant Gilroy still refused to give Plaintiff more

than five pages, and Plaintiff approached Defendant Decoria about the issue. *Id.* Plaintiff alleges

Defendant Decoria told him that he should wait until Defendant Decoria was in the control point

and that Plaintiff would then receive the remaining sheets of paper. *Id.*

Plaintiff then returned to Defendant Gilroy and received five pages of paper. *Id.*

Defendant Gilroy allegedly told Plaintiff, "that is all you're getting today." *Id.* Plaintiff then

responded, "that is fine, I will just add you to my lawsuit." *Id.* Plaintiff alleges Defendant Gilroy

then accused Plaintiff of "disrespecting his authority by threatening to sue him in the presence of

other AICs," and Plaintiff cited administrative rules and case law in support of his position. *Id.* at

4. Defendant Gilroy then instructed Plaintiff to "cell in" and await a conduct order. *Id.* Defendant

Gilroy wrote the following conduct order ("2015 Conduct Order"):

> Inmate was disrespectful [and] argumentative in front of other
> inmates. Inmate threatened to sue staff member. Inmate [tried] to
> get the other staff on the [unit] to do what the other officer had
> already told him no. I pulled the inmate into the office to talk about
> it where he continued to be disrespectful.

Pl.'s Mot., Ex. 1, ECF No. 144-2. Defendant Young signed off on Defendant Gilroy's conduct

order. *Id.*

Plaintiff later left his cell to inform Defendant Decoria that he wished to file a grievance

with Defendant Young for a "clear and blatant violation of Plaintiff's first Amendment rights."

Pl.'s Resp. 5, ECF No. 205. Plaintiff claims Defendants left his cell open "to invite [him] down to parley with them at the control point." Pl.'s Decl. 2, ECF No. 145.

In response, Defendant Gilroy charged Plaintiff with Disrespect I, Unauthorized Area I, and Disobedience of an Order I and sent Plaintiff to DSU. Pl.'s Mot. 2, Ex. 2, ECF No. 144-2. Defendant Gilroy drafted the following misconduct report ("2015 Misconduct Report"):

> On 10/31/15 . . . [Plaintiff] came up to the control point and asked me for 8 pieces of blank paper. I said five is what I can give you; [Plaintiff] replied in a disrespectful tone "I can have as many as I want I'm working on legal work." I told him you can be issued only five a day as I went to grab his five sheets I looked back and he walked to the other officer to ask him. After talking with the other officer [Plaintiff] came back and tried to convince me that he was allowed five pieces [of paper] an hour. [Plaintiff] was very disrespectful throughout this conversation he was getting very loud and causing a scene. I pulled him in[to] the office at which point he continued to argue and tell me that he was going to add me to his law[suit].

*Id.* Defendant Gilroy then wrote that Plaintiff was instructed to stay in his cell but failed to do so. *Id.* Defendant Burchett signed the 2015 Misconduct Report as the reviewing supervisor. *Id.*

Defendants held a disciplinary hearing for Plaintiff on November 3, 2015. Pl.'s Mot. 3, Ex. 3, ECF No. 144-2. That same day, Hearing Officer James Deacon dismissed the charges against Plaintiff without prejudice because "there is no disrespect in the body of the Misconduct Report. Informing staff of pending legal actions is not disrespect." *Id.* Hearing Officer Deacon noted that "[a]ccording to the inmate the other officer opened his door giving him permission to come out of his cell and approach the Unit Control Point" and that "[m]ore information and a memorandum from the other officer is needed." *Id.* Plaintiff requested video footage of Defendants allegedly opening his cell door, but Hearing Officer Deacon denied the request because Hearing Officer Deacon received it after Plaintiff's hearing had already concluded. Pl.'s Mot. 9–10, Ex. 6, ECF No. 144-2. Hearing Officer Deacon instructed Defendants to submit a

new misconduct report if needed, but Defendants never did so. *See* Pl.'s Mot. 3, Ex. 3, ECF No. 144-2; *see also* Pl.'s Mot. 8, Ex. 5, ECF No. 144-2. In May 2016, Plaintiff initially filed this action based on the 2015 Incident. FAC 7, ECF No. 125; *see also* Defs.' Mot. 23, ECF No. 194.

## II.     2016 Incident

On June 21, 2016, Plaintiff sat at a table with two other AICs during lunch in the AHU. Pl.'s Decl. 4, ECF No. 145. An altercation soon began between Plaintiff and one of the AICs at the table. *Id.* at 6. Plaintiff alleges that he spoke calmly with the other AIC. *Id.* Defendants, however, framed the exchange as a "heated discussion" in which Plaintiff used profanities. Pl.'s Mot. 51, Ex. 10, ECF No. 144-2.  Plaintiff denies using profanities. Pl.'s Resp. 6, ECF No. 205.

When Defendants arrived to escort Plaintiff to the DSU, Plaintiff asked why the other AIC was not headed to the DSU as well. Pl.'s Suppl. 44, Ex. 34, ECF No. 187. Defendants explained to Plaintiff that they heard only Plaintiff's comments, not the other AIC's alleged comments. Pl.'s Mot. 51, Ex. 10, ECF No. 144-2. Plaintiff then packed up his belongings, including legal work, and told Defendants "this [is] all just retaliation for filing a lawsuit." *Id.* In a misconduct report ("2016 Misconduct Report"), Defendant Fernandez charged Plaintiff with Disrespect I, Extortion I, and Disobedience of an Order I and included the following information:

> [Plaintiff] then stated "I am going to pack up my TV" and was allowed to do this. I then ordered [Plaintiff] to back up to be restrained and he refused saying he had legal work to pack up and that this was all just retaliation for filing a lawsuit. I then asked how could it be retaliation if [Plaintiff] has not filed any lawsuits on me. [Plaintiff] was attempting to intimidate my actions by threatening to sue me and file lawsuits on me. I then ordered [Plaintiff] to submit to restraints or if he was refusing to which he stated "Go ahead and call them" while he continued to disobey the Order to submit to restraints. I then walked away from the cell door and notified Sgt. Simpson that [Plaintiff] refused to submit.

*Id.* The 2016 Misconduct Order was signed by Defendants Lytle and Iverson. *Id.* Plaintiff was in the DSU from June 21, 2016 until July 4, 2016. Pl.'s Mot. 55, Ex. 11 at 4, ECF No. 144-2. Plaintiff alleges that Defendants "destroyed, illegally seized, lost or other[wise] deprived [him] of his property" including his lost remote control, peanut butter jar, headphones, book, and eyeglasses as well as damaging his television. FAC 8, ECF No. 125.

On June 24, 2016, Plaintiff attended a hearing before Hearing Officer Deacon. Pl.'s Mot. 52, Ex. 11 at 1, ECF No. 144-2. Hearing Officer Deacon approved Plaintiff's request for an investigation, and ultimately dismissed all charges against Plaintiff in January 2017 because Defendants' investigation was not completed in a timely manner. *Id.*

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved

against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

## DISCUSSION

Plaintiff moves for summary judgment as to his First Amendment and Fourteenth Amendment claims. Pl.'s Mot. 1–2, ECF No. 144. Defendants move for summary judgment as to all of Plaintiff's claims. Defs.' Mot. 8–29, ECF No. 194. For the reasons that follow, Plaintiff's motion is DENIED and Defendants' motion is GRANTED in part and DENIED in part.

## I.      § 1983 Liability

Defendants argue that summary judgment is appropriate as to Defendants Peters, Myrick, Decoria, Counihan, Beerbower, Lattimer, and Reynolds because they had no personal involvement in the alleged constitutional deprivations. Defs.' Mot. 9, ECF No. 194.

To state a civil rights claim under § 1983, plaintiff must allege that (1) a person acting under color of law (2) deprived him of a federal constitutional right. 42 U.S.C. § 1983; *Stein v. Ryan*, 662 F.3d 1114, 1118 (9th Cir. 2011). Liability under § 1983 arises upon a showing of personal participation by each defendant, and a supervisor is not liable for the constitutional violations of employees unless the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff must show that each named defendant, through their own individual actions, violated Plaintiff's constitutional rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

### A.      Defendant Collette Peters

Defendants argue that summary judgment is appropriate as to all claims against Defendant Peters because Plaintiff's FAC alleges nothing about her involvement in the alleged constitutional deprivations. Defs.' Mot. 9, ECF No. 194. The Court has scoured Plaintiff's FAC

and confirms that Plaintiff has not alleged any facts that give rise to a § 1983 claim against Defendant Peters. As such, Defendants' motion is granted as to Plaintiff's claims against Defendant Peters.

### B.    Defendant John Myrick

Defendants argue that Plaintiff's single allegation that Defendant Myrick "failed to properly train his staff to prevent such an incident from occurring" is not enough to survive summary judgment. Defs.' Mot. 9–10, ECF No. 194 (quoting FAC 6–9, ECF No. 125).

Supervisors are liable for a constitutional violation under § 1983 only if on actual or constructive notice of the need to train. *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1085 (9th Cir. 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994)). To impose liability under a failure to train theory, a plaintiff must allege sufficient facts that the subordinate's training was inadequate, the inadequate training was a deliberate choice on the part of the supervisor, and the inadequate training caused a constitutional violation. *Canell v. Lightner*, 143 F.3d 1210, 1214 (9th Cir. 1998).

Here, Plaintiff has failed to offer evidence that Defendant Myrick's alleged failure to train was a "deliberate" choice on his part such that supervisory liability should attach. Nor has Plaintiff offered evidence that Defendant Myrick was aware that staff allegedly failed to comply with existing policy. *See Lemire*, 726 F.3d at 1085. As such, Defendants' motion is granted as to Plaintiff's claims against Defendant Myrick.

### C.    Defendant Sylvan Decoria

Defendants argue that summary judgment is appropriate as to Plaintiff's claims against Defendant Decoria because the FAC alleges nothing specific about Defendant Decoria, but instead "lumps him in with Defendant Gilroy[.]" Defs.' Mot. 10, ECF No. 194. In his FAC,

Plaintiff alleges that Defendants Decoria and Gilroy took adverse action against him. FAC 5, ECF No. 125.

The Ninth Circuit has noted that an amended complaint is fatally flawed when it "impermissibly lump[s] together claims and defendants." *Salazar v. County of Orange*, 564 Fed. App'x 322, 322 (9th Cir. 2014). Here, Plaintiff offers no evidence that indicates Defendant Decoria had any personal involvement in the alleged constitutional deprivations Plaintiff suffered. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As such, Defendants' motion is granted as to Plaintiff's claims against Defendant Decoria.

### D.      Defendants Lenny Counihan, Mark Lattimer, and Jason Reynolds

Defendants argue that summary judgment is appropriate as to Plaintiff's claims against Defendants Counihan, Lattimer, and Reynolds because: (1) Plaintiff's FAC does not allege the specific participation attributable to each Defendant personally; (2) Plaintiff does not offer any evidence indicating Defendant Counihan had any personal involvement in the alleged constitutional deprivation Plaintiff suffered; and (3) Plaintiff does not offer evidence showing Defendants Lattimer and Reynolds were involved in the decision to send Plaintiff to DSU or had any improper motive in following orders. Defs.' Mot. 11–12, ECF No. 194. In his FAC, Plaintiff alleges that "[o]n June 21, 2016, Defendants Fernandez, Coonihan, Lattimer, and Reynolds did take adverse action against [P]laintiff for his use of Constitutionally protected rights to speech[.]" FAC 7, ECF No. 125.

First, as discussed above, Plaintiff cannot lump all three Defendants together and must instead plead that each Defendant through their own individual actions violated Plaintiff's

constitutional rights. *See Iqbal*, 556 U.S. at 676; *see also Salazar*, 564 Fed. App'x at 322. Second, Plaintiff has neither alleged nor offered any evidence to demonstrate that Defendant Counihan had personal involvement in the alleged constitutional deprivation he suffered. The Court has scoured Plaintiff's FAC and confirms that Plaintiff has not alleged any facts that give rise to a § 1983 claim against Defendant Counihan. Third, Plaintiff has not offered any evidence to show Defendants Lattimer and Reynolds had any personal involvement in the decision to send Plaintiff to DSU. The documents relating to the 2016 incident show only that Defendants Lattimer and Reynolds escorted Plaintiff to DSU pursuant to the orders they received. *See* Parker Decl., Ex. 2 at 2, ECF No. 197. Plaintiff has not offered any evidence to show Defendants Lattimer and Reynolds acted out of retaliatory animus. As such, Defendants' motion is granted as to Plaintiff's claims against Defendants Counihan, Lattimer, and Reynolds.

### E.    Defendant Vince Beerbower

Defendants argue that summary judgment is appropriate as to Plaintiff's claims against Defendant Beerbower because Plaintiff offers no evidence or allegations that Defendant Beerbower violated Plaintiff's constitutional rights. Defs.' Mot. 12, ECF No. 194. In the FAC, Plaintiff alleges that Defendant Beerbower lost Plaintiff's peanut butter jar and remote control after Defendant Zollman seized these items. FAC 8 n.1–2, ECF No. 125.

Plaintiff fails to allege a constitutional violation. *See Daniels v. Williams*, 474 U.S. 327, 333 (1986) (finding that negligent injury is not a violation of due process); *see also Wolff v. Hood*, 242 F. Supp. 2d 811, 818 (D. Or. 2002) (finding that negligent loss of property does not violate due process). As such, Defendants' motion is granted as to Plaintiff's claims against Defendant Beerbower.

## II.    Adequacy of Pleadings

### A.  Legal Conclusions

Defendants argue that Plaintiff's Eighth Amendment and state tort law claims should not be considered because they "are not expanded on or included in the [FAC's] introduction, headings for each claim, prayer for relief, nor are they argued in Plaintiff's own summary judgment motion." Defs.' Mot. 2, ECF No. 194.

Plaintiff alleges no facts giving rise to an Eighth Amendment or state tort law claim. Plaintiff merely alleges that Defendants violated Plaintiff's rights "under the Eighth Amendment . . . [a]nd state tort law for malpractice." FAC 6, 9, ECF No. 125. Plaintiff does not offer any evidence in support of his allegations. Such conclusory allegations are insufficient to survive summary judgment. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. . . . [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal citations and quotations omitted). As such, Defendants' motion is granted as to Plaintiff's Eighth Amendment claim and state law malpractice claim.

### B.  Newly Raised Arguments

Defendants argue that the Court should reject Plaintiff's claims relating to his medical care and related damages because: (1) that issue is not in Plaintiff's FAC; (2) Plaintiff cannot prove a causal link between any alleged constitutional violation and his later medical condition; and (3) Plaintiff offers nothing more than speculation to connect his medical care to any of the issues alleged. Defs.' Resp. 3, ECF No. 198.

Plaintiff made no allegations regarding his medical care in his FAC. Plaintiff may not use summary judgment briefing to raise new claims not previously raised in his FAC. *See Navajo*

*Nation v. United States Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("[O]ur precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court."); *see also Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.") (citation omitted). As such, Defendants' motion is granted as to any claims relating to Plaintiff's medical care raised for the first time in Plaintiff's motion for summary judgment.

### III.    First Amendment Claims

Plaintiff argues he is entitled to summary judgment on his First Amendment retaliation claims because: (1) Plaintiff has met the burdens to prove retaliation for protected speech; (2) Plaintiff has presented sufficient evidence of Defendants' retaliatory motive; (3) the ODOC has a long-held custom and policy of retaliation for protected speech by AICs; (4) Defendants are not entitled to qualified immunity; (5) Defendants' actions failed to advance a legitimate correctional goal; and (6) Plaintiff has exhausted all administrative remedies available to him. Pl.'s Mot. 4–17, ECF No. 144-1. In response, Defendants argue that: (1) Plaintiff has not met his burdens for the purpose of summary judgment; (2) medical issues raised in Plaintiff's motion for the first time are not at issue and are not supported; (3) ODOC did not have a policy of retaliation; (4) Defendants are protected by qualified immunity; and (5) Plaintiff failed to exhaust all administrative remedies available to him. Defs.' Resp. 3–7, ECF No. 198. Defendants further argue they are entitled to summary judgment on Plaintiff's First Amendment retaliation claims because: (1) Plaintiff cannot show causation between his protected speech and Defendants'

adverse action; and (2) Plaintiff cannot show Defendants' lack of legitimate correctional goals. Defs.' Mot. 17–26, ECF No. 194.

To state a viable claim of First Amendment retaliation, plaintiff must allege five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted). Retaliation against prisoners for exercising their First Amendment right to file grievances "is itself a constitutional violation." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009); *see also Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) (stating that "threats to sue fall within the purview of the constitutionally protected right to file grievances").

Defendants do not challenge the first (adverse action), third (protected conduct), or fourth (chilling effect) elements of a First Amendment retaliation claim for the purpose of their motion. *See* Defs.' Mot. 17, ECF No. 194 ("There is no dispute that Plaintiff was given misconduct orders and sent to segregation, that his statements about lawsuits are protected conduct, and that the conduct and segregation could potentially have a chilling effect on a person's exercise of First Amendment rights.").

### A. Causation

Plaintiff argues he is entitled to summary judgment because he has offered sufficient evidence showing that Defendants' adverse actions against him were taken because of his protected conduct. Pl.'s Mot. 5, ECF No. 144-1. Defendants argue that Plaintiff cannot show causation between his protected speech and Defendants' adverse actions. Defs.' Mot. 19–20, 23–24, ECF No. 194.

To satisfy the causation requirement, a plaintiff "must allege a causal connection between the adverse action and the protected conduct." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). "To show the presence of this element on a motion for summary judgment, [a plaintiff] need only 'put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [a defendant's] intent[.]" *Brodheim*, 584 F.3d at 1271 (citation omitted). Mere speculation that a defendant acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). However, "timing can properly be considered as circumstantial evidence of retaliatory intent." *Id.* (quoting *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995)).

1. 2015 Incident

On October 31, 2015, Plaintiff used the TRCI library to draft and file a motion for his pending case. *See* Pl.'s Resp. 2, ECF No. 205; *see also* Pl.'s Mot., Ex. 5 at 1, ECF No. 144-2. When Plaintiff requested eight pages of typing paper, Defendant Gilroy told Plaintiff that he could receive only five pages per day. Pl.'s Mot., Ex. 5 at 1, ECF No. 144-2. Plaintiff then explained to Defendant Gilroy that the five-page limit only applied to AICs in the DSU, not AICs in the AHU such as Plaintiff. *Id.* Defendant Gilroy repeatedly refused to give Plaintiff the additional paper. Pl.'s Suppl., Ex. 21 at 1, ECF No. 180. Plaintiff then responded, "that is fine, I will just add you to my lawsuit." *Id.* at 2. Plaintiff alleges Defendant Gilroy then accused Plaintiff of "disrespecting his authority by threatening to sue him in the presence of other AICs," and Plaintiff cited administrative rules and case law in support of his position. Pl.'s Resp. 4, ECF No. 205.

When Defendant Gilroy later drafted a conduct order about the incident, he wrote that Plaintiff was "disrespectful [and] argumentative in front of other inmates" and that Plaintiff

"threatened to sue[.]" Pl.'s Mot., Ex. 1, ECF No. 144-2. Plaintiff then informed Defendant

Decoria that he wished to file a grievance for a "clear and blatant violation of Plaintiff's first

Amendment rights." Pl.'s Resp. 5, ECF No. 205; *see also* Pl.'s Suppl., Ex. 23 at 2, ECF No. 180.

In the 2015 Misconduct Report, Defendant Gilroy wrote that Plaintiff was "very disrespectful

throughout this conversation" and he told Defendant Gilroy that Plaintiff was "going to add

[Defendant Gilroy] to his law[suit]." Pl.'s Mot. 2, Ex. 2, ECF No. 144-2. After Defendants held a

disciplinary hearing for Plaintiff in November 2015, the hearing officer dismissed the charges

because "there is no disrespect in the body of the Misconduct Report. Informing staff of pending

legal actions is not disrespect." Pl.'s Mot. 3, Ex. 3, ECF No. 144-2.

Viewing these facts in the light most favorable to Plaintiff and drawing all reasonable

inferences in his favor, the Court concludes that Plaintiff has offered sufficient evidence of

retaliatory motive to raise a genuine issue of material fact as to whether Defendants' actions

were undertaken in retaliation for Plaintiff's protected speech. *See Brodheim*, 584 F.3d at 1271.

Defendants explicitly referenced Plaintiff's litigation threat in both the conduct order and

misconduct report. *See, e.g.*, Pl.'s Mot. 2, Ex. 2, ECF No. 144-2. However, Defendants maintain

that the cell-in order came only after Plaintiff argued with Defendant Gilroy, and that Plaintiff's

disrespectful demeanor—not Plaintiff's threat to sue—gave rise to Defendants' actions. *See*

Parker Decl., Ex. 1 at 1, ECF No. 197; *see also* Pl.'s Suppl., Ex. 21 at 2, ECF No. 180. Given

these facts, a reasonable jury could find that Defendants' adverse action was taken in retaliation

for Plaintiff engaging in protected speech. Because a genuine dispute as to this material fact

exists, neither party is entitled to judgment as a matter of law. As such, Defendants' motion is

denied as to Plaintiff's First Amendment claim based on the 2015 Incident. In addition,

Plaintiff's motion is also denied as to his First Amendment claim based on the 2015 Incident.

2.  <u>2016 Incident</u>

Plaintiff alleges that, after filing this action based on the 2015 Incident, Defendants engaged in a "campaign of open hostile harassment [] toward Plaintiff for no otherwise legitimate correctional goal or explainable reason other than the recent 42 U.S.C. § 1983 action filed by [P]laintiff." FAC 7, ECF No. 125. On June 21, 2016, Plaintiff sat at a table with two other AICs during lunch in the AHU. Pl.'s Decl. 4, ECF No. 145. An altercation soon began between Plaintiff and one of the AICs at the table. *Id.* at 6. Plaintiff alleges that he spoke calmly with the other AIC. *Id.* Defendants, however, framed the exchange as a "heated discussion" in which Plaintiff used profanities. Pl.'s Mot. 51, Ex. 10, ECF No. 144-2. Plaintiff denies that he used profanities. Pl.'s Resp. 6, ECF No. 205.

When Defendants arrived to escort Plaintiff to the DSU, Plaintiff asked why the other AIC was not headed to the DSU as well. Pl.'s Suppl. 44, Ex. 34, ECF No. 187. Defendants explained to Plaintiff that they heard only Plaintiff's comments, not the other AIC's alleged comments. Pl.'s Mot. 51, Ex. 10, ECF No. 144-2. Plaintiff then packed up his belongings, including legal work, and told Defendants "this [is] all just retaliation for filing a lawsuit." *Id.* In a misconduct report ("2016 Misconduct Report"), Defendant Fernandez charged Plaintiff with Disrespect I, Extortion I, and Disobedience of an Order I. *Id.* Defendant Fernandez noted that when he ordered Plaintiff to back up for restraints, Plaintiff refused and said "this [is] all just retaliation for filing a lawsuit." *Id.*

Here, Plaintiff has failed to offer any evidence that rises above mere speculation to show Defendants acted out of a retaliatory motive. *See Wood*, 753 F.3d at 899. While timing can be considered as circumstantial evidence of retaliatory intent, Plaintiff offers no evidence that his filing the action based on the 2015 Incident was the motivating or substantial cause of

Defendants' actions in the 2016 Incident. Plaintiff merely alleges that his filing a lawsuit "alert[ed] prison staff to a pending civil rights action that in Plaintiff's experience leads to staff retaliation." FAC 7, ECF No. 125. Plaintiff offers no evidence that the individual Defendants involved in the 2016 Incident actually knew about the 2015 Incident. *See O'Connor v. County of Clackamas*, Case No. 3:11-cv-1297-SI, 2013 WL 3818143, at *24 (D. Or. Jul. 22, 2013) ("Knowledge is a requirement in a First Amendment retaliation claim."), *aff'd*, 627 Fed. App'x 670 (9th Cir. 2015). Consequently, Plaintiff cannot show a connection between his filing a lawsuit and Defendants' adverse actions.

Furthermore, Plaintiff's evidence does not support any causal link between Defendants' actions and Plaintiff's statement that he intended to sue Defendants. By the time Plaintiff stated that Defendants' behavior was retaliatory and he would sue, Defendants were already escorting him to DSU and asking him to back up for restraints. *See* Pl.'s Mot. 51, Ex. 10, ECF No. 144-2. In essence, Plaintiff attempts to claim Defendants' actions were retaliation for a statement he had not yet made. Accordingly, Plaintiff cannot show a connection between Defendants' adverse actions and Plaintiff's statement that he was being retaliated against and would sue.

Plaintiff has failed to raise a genuine issue of material fact as to whether Defendants acted out of retaliation for Plaintiff's protected conduct. As such, Defendants' motion should be granted as to Plaintiff's First Amendment claim based on the 2016 Incident.

## B. Legitimate Correctional Goal

Plaintiff argues he is entitled to summary judgment because he has properly pled and offered sufficient evidence showing that Defendants' adverse actions against him did not serve a legitimate correctional goal. Pl.'s Mot. 5, ECF No. 144-1. Defendants argue that Plaintiff cannot show a lack of legitimate correctional goals. Defs.' Mot. 20–22, 24–26, ECF No. 194.

To sufficiently allege that prison authorities' retaliatory action did not advance a legitimate correctional goal, a plaintiff must show, "in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were unnecessary to the maintenance of order in the institution." *Watison*, 668 F.3d at 1114 (internal quotations and citations omitted). "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt*, 65 F.3d at 806.

To determine whether an adverse action is reasonably related to legitimate penological interests, the Supreme Court established the following four-factor test:

> First and foremost, "there must be a 'valid, rational connection' between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it." If the connection between the regulation and the asserted goal is "arbitrary or irrational," then the regulation fails, irrespective of whether the other factors tilt in its favor. In addition, courts should consider three other factors: the existence of "alternative means of exercising the right" available to inmates; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and "the absence of ready alternatives" available to the prison for achieving the governmental objectives.

*Shaw v. Murphy*, 532 U.S. 223, 230–31 (2001) (quoting *Turner v. Safley*, 482 U.S. 78, 107 (1987)) (bracketing in original; internal citations omitted).

Defendants "may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003). If prison officials abuse what is otherwise a legitimate correctional goal "as a cover or a ruse to silence and punish [a plaintiff] because he filed grievances, they cannot assert that [their actions] served a valid penological purpose[.]" *Id.*

1.  <u>2015 Incident</u>

Defendants argue that the "legitimate correctional goals for the [2015] conduct order and cell-in are obvious" because "[p]reventing an AIC from attempting to play one officer against the other and debating rules with officers in public is a legitimate correctional goal." Defs.' Mot. 20–21, ECF No. 194. The Court disagrees. As explained, Plaintiff has raised a genuine issue of material fact as to whether Defendants' adverse action was undertaken in retaliation for Plaintiff's protected conduct. Viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, a reasonable jury could conclude that Defendants abused what is otherwise a legitimate correctional goal "as a cover or a ruse to silence and punish [Plaintiff] because he filed grievances[.]" *Bruce*, 351 F.3d at 1289. As such, Defendants' motion is denied as to Plaintiff's First Amendment claim based on the 2015 Incident.

2.  <u>2016 Incident</u>

Because the Court has already determined that Plaintiff failed to raise a genuine issue of material fact as to whether Defendants acted in retaliation for Plaintiff's protected conduct in the 2016 Incident, the Court need not address whether Defendants had a legitimate correctional goal for their adverse actions.

## C.  Qualified Immunity

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). The purpose of qualified immunity is to "strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when

they perform their duties reasonably.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (quoting *Pearson*, 555 U.S. at 231). Qualified immunity "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231.

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts may exercise their discretion in deciding which prong to address first "as they are in the best position to determine the order of decision making that will best facilitate the fair and efficient disposition of each case." *Pearson*, 555 U.S. at 242.

Whether an official is entitled to qualified immunity "generally turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citations and internal quotations omitted). "For a right to be 'clearly established,' existing 'precedent must have placed the statutory or constitutional question *beyond debate*,' such that 'every' reasonable official, not just 'a' reasonable official, would have understood that he was violating a clearly established right." *Thompson v. Rahr*, 885 F.3d 582, 587 (9th Cir. 2018) (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Here, Defendants are not protected by qualified immunity. The Ninth Circuit has noted that "the prohibition against retaliatory punishment is clearly established law in the Ninth Circuit, for qualified immunity purposes." *Bruce*, 351 F.3d at 1290 (citing *Pratt*, 65 F.3d at 806)

(internal quotations omitted). Because Plaintiff has sufficiently raised a genuine issue of material fact as to whether Defendants retaliated against him for his protected conduct in the 2015 Incident, Defendants are not entitled to qualified immunity.

### D.  Conclusion

Plaintiff's motion is denied as to his First Amendment claims. In addition, Defendants' motion is denied as to Plaintiff's First Amendment claim based on the 2015 Incident. However, because Plaintiff cannot show a genuine issue of material fact relating to the 2016 Incident, Defendants' motion is granted as to Plaintiff's First Amendment claim based on the 2016 Incident.

## IV.    Fourth Amendment Claims

Defendants argue that they are entitled to summary judgment on Plaintiff's Fourth Amendment claim because the Fourth Amendment does not apply to prisoners. Defs.' Mot. 12, ECF No. 194. In his FAC, Plaintiff alleges that Defendants "destroyed, illegally seized, lost or other[wise] deprived [him] of his property" including his lost remote control, peanut butter jar, headphones, book, and eyeglasses as well as damaging his television. FAC 8, ECF No. 125.

In *Hudson v. Palmer*, the Supreme Court held that "the Fourth Amendment has no applicability to a prison cell." 468 U.S. 517, 536 (1984). The Supreme Court further held that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell[.]" *Id.* at 526. Here, Plaintiff's claims fail because prisoners do not have an expectation of privacy in their cells. As such, Defendants' motion is granted as to Plaintiff's Fourth Amendment claims.

## V.    Fourteenth Amendment Claims

Plaintiff argues he is entitled to summary judgment on his Fourteenth Amendment claims because: (1) the disciplinary charges were completely unsupported by evidence; (2) Plaintiff's requests for allegedly exculpatory video evidence were denied; (3) Defendants are not entitled to qualified immunity; and (4) Plaintiff exhausted all available administrative remedies. Pl.'s Mot. 13–17, ECF No. 144-1. In response, Defendants argue that: (1) Plaintiff did not suffer any atypical and significant hardship because there is no due process issue when a case is dismissed; (2) Defendants are protected by qualified immunity. Defs.' Resp. 4–6, ECF No. 198. Defendants further argue that they are entitled to summary judgment on Plaintiff's Fourteenth Amendment claims because: (1) Plaintiff did not suffer any atypical loss of rights when he was segregated so as to trigger due process requirements; (2) lost or damaged property do not support due process claims when the damages can be pursued in state court; and (3) Plaintiff failed to exhaust administrative remedies for the alleged damage to his television and remote control. Defs.' Mot. 13, ECF No. 194.

### A.  Loss of Liberty

A prisoner is entitled to procedural due-process protections only when a prison-disciplinary action "implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). To determine whether discipline becomes an atypical and significant hardship, courts consider "(1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the

degree of restraint imposed; and (3) whether the state's action will invariably affect the duration

of the prisoner's sentence." *Serrano*, 345 F.3d at 1078 (internal quotations and citation omitted).

Placement in disciplinary segregation for up to thirty days is not ordinarily considered an

atypical or significant hardship. *See, e.g., May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997)

(holding that placement in disciplinary segregation does not implicate a liberty interest because it

"falls within the terms of confinement ordinarily contemplated by a sentence"); *Resnick v.*

*Hayes*, 213 F.3d 443, 448–49 (9th Cir. 2000) (placement in segregated housing pending a

disciplinary hearing did not implicate a protected liberty interest); *but see Brown v. Oregon*

*Dep't Corr.*, 751 F.3d 983, 985 (9th Cir. 2014) (finding that a prisoner's 27-month placement in

"intensive," solitary segregation "with no meaningful review" implicated a protected liberty

interest).

Here, Plaintiff fails to offer evidence showing that there is a genuine issue of material fact

as to whether he suffered an atypical and significant hardship. First, Plaintiff has not alleged

there was anything unusual about his confinement in the DSU. *See Smith v. Powell*, Case No.

2:14-cv-01725-SB, 2016 WL 11384325, at *6 (D. Or. Jan. 25, 2016), *aff'd*, 693 Fed. App'x 610

(9th Cir. 2017) ("Segregation in a DSU cell, standing alone, does not satisfy the significant and

atypical hardship requirement.") (citing *Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th

Cir. 1995)). Second, Plaintiff spent less than a week in segregation in 2015, and two weeks in

2016. FAC 5, 7, ECF No. 125; *see also Howard v. Riley*, Case No. 2:17-cv-01098-AC, 2018 WL

4355223, at *7 (D. Or. Aug. 16, 2018), *adopted*, 2018 WL 4354299 (D. Or. Sep. 12, 2018) ("[A

plaintiff's] two-month administrative segregation and 28-day privileges loss, even including that

of his prison job as a clerk, fall within the ordinary terms of confinement contemplated by his

sentence and, therefore, under Ninth Circuit precedent do not represent atypical or significant

hardship."). Third, Plaintiff has not alleged or offered any evidence that the duration of his sentence has been affected. *See Serrano*, 345 F.3d at 1078. Accordingly, Plaintiff's confinement in the DSU did not constitute an atypical or significant hardship such that he was entitled to due process protections.

### B.  Loss of Property

Generally, the deprivation of a protected property interest requires a meaningful opportunity to be heard at a meaningful time. *Zinermon v. Burch*, 494 U.S. 113, 126–27 (1990). When a state official's deprivation of property is authorized by established state procedures, regulations, or statutes, a pre-deprivation hearing is typically required. *See id.* at 127, 132; *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985). However, when the alleged deprivation of property arises from an unauthorized action by a prison official, whether intentional or negligent, the Supreme Court "has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Zinermon*, 494 U.S. at 128; *see also Hudson v. Palmer*, 468 U.S. at 533  ("An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."). Oregon provides an adequate post-deprivation remedy for the unauthorized destruction of property through the Oregon Tort Claims Act. *Gutierrez v. Williams*, 505 Fed. App'x 659, 660 (9th Cir. Jan. 17, 2013) (citing Or. Rev. Stat. § 30.260 et seq). Here, because the Oregon Tort Claims Act provides an adequate post-deprivation remedy, Plaintiff fails to state a due process claim for his lost or damaged property.

### C.  Conclusion

For the above reasons, Plaintiff's motion is denied and Defendants' motion is granted as to Plaintiff's Fourteenth Amendment claims.

## VI.  Damages

Defendants argue that Plaintiff's damages are limited because: (1) absent a physical injury relating to Plaintiff's claims, mental and emotional distress damages are barred by PLRA; and (2) there is no basis for punitive damages. Defs.' Mot. 29, ECF No. 194.

### A.    PLRA

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e); *see also Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002) ("[F]or all claims to which it applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be significant but must be more than *de minimis*."). Here, Plaintiff makes no allegations of physical injury related to his claims. As such, Defendants' motion is granted as to Plaintiff's request for mental and emotional distress damages.

### B.    Punitive Damages

It is "well-established that a 'jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (quoting *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993)). "The standard for punitive damages under § 1983 mirrors the standard for punitive damages under common law tort cases," and "malicious, wanton, or oppressive acts or omissions are within the boundaries of

traditional tort standards for assessing punitive damages." *Id.* (citing *Smith v. Wade*, 461 U.S. 30, 34 (1983)).

Plaintiff fails to respond to Defendants' motion concerning summary judgment of Plaintiff's request for punitive damages. *See* Pl.'s Resp., ECF No. 205; *see also Justice v. Rockwell Collins, Inc.*, 117 F. Supp. 3d 1119, 1134 (D. Or. 2015) ("[i]f a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded"), *aff'd*, 720 F. App'x 365 (9th Cir. 2017). As such, Defendants' motion is granted as to Plaintiff's request for punitive damages.

## CONCLUSION

For the reasons above, Plaintiff's motion for summary judgment (ECF No. 144) is DENIED and Defendants' motion for summary judgment (ECF No. 194) is GRANTED in part and DENIED in part. The Court summarizes the disposition for each claim raised in Defendants' motion to dismiss as follows:

I.    All Claims

    Defendant        Peters:        GRANTED
                     Myrick:        GRANTED
                     Decoria:       GRANTED
                     Counihan:      GRANTED
                     Lattimer:      GRANTED
                     Reynolds:      GRANTED
                     Beerbower:     GRANTED

II.    First Amendment Claim – 2015 Incident

    Defendant        Gilroy:        DENIED
                     Young:         DENIED
                     Burchett:      DENIED

III.    First Amendment Claim – 2016 Incident

    All Defendants:               GRANTED

IV.    Fourth Amendment Claims

      All Defendants:             GRANTED

V.    Eighth Amendment Claims

      All Defendants:             GRANTED

VI.    Fourteenth Amendment Claims

      All Defendants:             GRANTED

VII.    State Law Malpractice Claim

      All Defendants:             GRANTED

VIII.    Mental and Emotional Distress Damages

      All Defendants:             GRANTED

IX.    Punitive Damages

      All Defendants:             GRANTED

DATED this 18th day of March 2022.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge